UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILLIAM J. GUIDO,

                          Plaintiff,                    24 Civ. 7766   (   )

   -against-

                                                            **COMPLAINT**

SUFFOLK COUNTY, New York,
ROBERT WARING, in his Official Capacity,
MICHAEL KOMOROWSKI, Individually,
and Officer "JANE" CAMPBELL, Individually,

                          Defendants.
------------------------------------------------------------x

       Plaintiff, WILLIAM J. GUIDO, by and through his attorneys, The Bellantoni Law Firm, PLLC, for his Complaint respectfully states:

## NATURE OF THE ACTION

       1.     This is an action for, *inter alia*, injunctive, declaratory, compensatory, economic, punitive, and presumed money damages proximately resulting from the actions of the individually named defendants' violations of the plaintiff's Constitutional Rights under the Second, Fourth, and Fifth Amendments pursuant to 42 U.S.C. § 1983 by the enforcement of an unconstitutional municipal policy.

       2.     This action seeks, *inter alia*, a declaration that Suffolk County's policy of precluding the right to possess handguns based on the events, actions, and/or prohibited status of a cohabitant ("Cohabitant Policy") violates the Second Amendment; the forced surrender/ seizure of handguns by the enforcement of the Cohabitant Policy violates the Fourth Amendment; and the lengthy, limitless time period for the retention of handguns, *inter alia*, violates the Fifth Amendment "Takings Clause."

## JURISDICTION

3. Jurisdiction in this court is proper pursuant to 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under of color of the laws, statutes, ordinances, regulations, customs, and usages of the State of New York, of rights, privileges or immunities secured by the United States Constitution.

4. This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 42 U.S.C. § 1983.

5. Venue in this district is proper pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6. Plaintiff, WILLIAM J. GUIDO (hereinafter "Plaintiff"), is a natural person and a resident of Suffolk County, New York under the jurisdiction of the Suffolk County Police Department ("SCPD").

7. Defendant, SUFFOLK COUNTY, New York (hereinafter the "County"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of the State.

8. Defendant, ROBERT WARING (hereinafter "Commissioner Waring"), was at all times relevant herein employed by the County as the Police Commissioner of SCPD (also the "Department"). Commissioner Waring is sued herein in his professional capacity only. As Police Commissioner, Commissioner Waring is the statutory pistol licensing officer for Suffolk County [see, Penal Law § 265.00(10)].

9. As the Suffolk County Police Commissioner, Waring has the authority to issue, suspend, revoke, and deny applications for a New York State pistol license. At all times relevant

herein, Waring (like his predecessors) delegated his licensing authority to Defendant Michael Komorowski.

10. Defendant MICHAEL KOMOROWSKI (hereinafter "Komorowski") was at all times relevant herein, an employee of Suffolk County, Lieutenant with the Suffolk County Police Department and the Commanding Officer of the Suffolk County Pistol Licensing Bureau (hereinafter "Licensing Bureau"). Komorowski is sued herein in his individual and personal capacity only.

11. At all times relevant herein, Komorowski had actual authority to suspend and/or revoke existing New York State Pistol Licenses issued by the Licensing Bureau, including Plaintiff's.

12. Komorowski rendered the final approval of the suspension of Plaintiff's pistol license as memorialized in Komorowski's Notice of Suspension dated June 21, 2024, which was served on Plaintiff.

13. At all times relevant herein, Komorowski had supervisory authority over the police officers and/or investigators assigned to the Pistol Licensing Bureau, including defendant Officer "Jane" Campbell.

14. At all times relevant to this action, Komorowski enforced the policies and procedures of the SCPD Licensing Bureau, including the "Cohabitant Policy."

15. At all times relevant to this action, Komorowski determined whether – and when - a suspended pistol license will be reinstated, if at all.

16. At all times relevant herein, Komorowski was deliberately indifferent to and disregarded Plaintiff's constitutional rights by enforcing the policies challenged herein.

17. Defendant, Officer "JANE" CAMPBELL ("Officer Campbell") was at all times relevant herein, an employee of Suffolk County and a SCPD police officer assigned to the Licensing Bureau. Campbell is sued herein in her individual and personal capacity only.

18. Suffolk County is liable for the acts and omissions of the individual defendants based on the existence of *Monell* liability, as set forth more fully below, for the established policies of the Pistol Licensing Bureau.

19. At all times relevant herein, each of the individual defendants was acting pursuant to the established policies and procedures of Suffolk County and SCPD, including those set forth in the SCPD Pistol Licensing Handbook.

## THE MATERIAL FACTS

### I. The Second Amendment

20. The Second Amendment to the United States Constitution provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

21. "[C]onsistent with *Heller* and *McDonald*, [] the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 10 (2022); see *District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S. 742 (2010); *Caetano v. Massachusetts,* 577 U.S. 411 (2016).

22. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17 (citation omitted).

23. "To justify its regulation, the government may not simply posit that the regulation promotes an important interest." *Ibid*.

24. "Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Ibid*.

25. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Ibid*.

26. In *United States v. Rahimi*, the Supreme Court held that temporarily disarming individuals who have been "found by a court to present a threat to others fits neatly within the tradition the surety and going armed laws represent." 144 S. Ct. 1889, 1901 (2024).

27. *Rahimi* underscores the holdings in *Heller*[1], *McDonald*[2], *Caetano*[3], and *Bruen*[4] – the presumption that "the People" have a preexisting right to possess and carry firearms - unless and until a court adjudicates otherwise.

## II. New York State Law

28. The possession of a handgun in New York State is, generally, a crime.

29. To lawfully possess and/or carry a handgun for self-defense, one must apply for and obtain a New York State pistol license from a statutory licensing officer.

30. Penal Law § 400.00 is New York State's licensing scheme.

31. Penal Law § 400.00(1) outlines the eligibility requirements for the issuance of a pistol license and a semiautomatic rifle license.

---

[1] *Heller*, 554 U.S. at 592 (holding that the plain text of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation").
[2] *McDonald,* 561 U.S. at 790 (holding that the "fundamental" right protected by the Second Amendment "applies equally to the Federal Government and the States").
[3] *Caetano,*577 U.S. at 416 (the Second Amendment "guarantees the right to carry weapons "typically possessed by law-abiding citizens for lawful purposes") (stun guns).
[4] *Bruen*, 597 U.S. at 57 (2022) (even under surety laws, "everyone started out with robust carrying rights").

32. New York State's statutory firearms licensing officers ("licensing officers") are created by the Legislature, as set forth in Penal Law § 265.00(10).

33. The authority of the licensing officers is limited to the scope of the duties outlined by the Legislature in Penal Law § 400.00. *Goldstein v. Schwartz*, 185 A.D.3d 929 (2d Dept. 2020).

***Suffolk County Pistol License Policy Regarding 'Cohabitants'***

34. For over a decade, it has been the policy and procedure of the SCPD Pistol Licensing Bureau to suspend and/or revoke the pistol license of individuals who reside with a third party who is, or who the Department believes may be, a person prohibited from possessing firearms.

35. Subsumed within the challenged policies Cohabitant Policy is the Licensing Bureau's suspension of licenses and seizure of handguns whenever a police response to a licensee's home occurs – irrespective of whether the licensee has committed a crime.

36. For over a decade, it has been the policy and procedure of the Licensing Bureau to suspend and/or revoke existing pistol licenses and confiscate the handguns of individuals despite the lack of any court adjudication that the licensee is "dangerous."

37. The suspension of handgun licenses and seizure of handguns occurs when a cohabitant is transported to the hospital for an evaluation and/or a medical condition.

38. The suspension of handgun licenses and seizure of handguns occurs where the Licensing Bureau learns that SCPD officers have responded to a complaint in a licensee's home.

39. The suspension and confiscation is automatic and occurs irrespective of whether the licensee was charged with a crime, whether charges have been filed, and/or whether an arrest was made.

40. Defendants suspended Plaintiff's pistol license and confiscated his handguns despite the fact that Plaintiff committed no crime, was not charged with a crime, and was not arrested for any crime.

41. The SCPD policies and procedures challenged herein are odious to the plain text of the Second Amendment and repugnant to America's historical traditions of firearm regulation.

42. America has no history or tradition of prohibiting an individual from possessing and/or carrying firearms because of the actions, status, and/or cohabitation with a third person.

43. America has no history or tradition of prohibiting an individual from possessing and/or carrying firearms based on events and/or conditions in the absence of a court adjudication of "dangerousness."

***Facts Particular to Plaintiff***

44. Plaintiff is 43 years of age, married, and a resident of Smithtown, New York.

45. Plaintiff has no prohibitors to the possession, receipt, transfer, or carriage of firearms under state or federal law and is one of 'the People' for whom the Constitution was codified.

46. Plaintiff has held a valid New York State pistol license for 22 years – without incident.

47. Plaintiff also owns long guns, which he purchased from a federal firearms licensee in New York State after passing a federal NICS check (National Instant Criminal Background Check System).

48. On or about June 20, 2024 Plaintiff's wife was behaving in an aggressive manner to Plaintiff and their daughter as a result of a medical condition.

7

49. SCPD officers responded to Plaintiff's home and transported Plaintiff's wife to Stony Brook CPEP (Comprehensive Psychiatric Emergency Program) for a mental health evaluation. Plaintiff's wife was having a hormonal imbalance, which was subsequently remedied.

50. Neither Plaintiff nor his wife completed a police incident report.

51. There was no "threat," "exigency," or crime committed by Plaintiff. Plaintiff did not violate any provision of the Penal Law, he was not charged with any offense, nor was he arrested.

52. The responding SCPD officers did not seize Plaintiff's handguns or long guns, nor did they apply for a warrant for such seizure.

53. At all times relevant to this complaint, there existed no allegation against Plaintiff that he used, threatened to use, displayed (or was even wearing) his handguns - or any weapon.

54. On or about June 21, 2024 at approximately 9:15 a.m., Officer Campbell called Plaintiff and informed him that "because of the nature of the call [police response]" his pistol license was now suspended.

55. The Licensing Bureau learned of the SCPD response to Plaintiff's home the day before because the responding officers informed the Licensing Bureau of the event.

56. Office Campbell further directed Plaintiff to surrender all of his handguns to his local SCPD precinct. Plaintiff asked, "What about my long guns?" to which Officer Campbell responded, "To be honest, we really don't care about them."

57. Plaintiff committed no act, and no event occurred, that rendered Plaintiff "ineligible" to hold a pistol license under Penal Law § 400.00(1).

58. Plaintiff committed no act that would render him a "prohibited person" under 18 U.S.C. § 922(g) or Penal Law § 265.01(4).

59. Plaintiff's long guns were not seized by SCPD, nor was he required to surrender them.

60. When Plaintiff asked for the grounds for the suspension of his license, Officer Campbell responded, "We don't know how to classify it" "we're concerned with household safety" and "it's protocol."

61. Officer Campbell informed that Plaintiff's license would be suspended for at least six months.

62. Plaintiff was later informed by the Licensing Bureau, when he again asked when his license would be reinstated, "you'll be lucky if you ever get it back" and that suspension files sit on Komorowski's desk for months and months and, basically, die there.

63. On June 21, 2024, Plaintiff surrendered his four (4) registered handguns and his pistol license to SCPD.

64. Plaintiff's wife has never had access to Plaintiff's handguns.

65. At all times relevant to this complaint, Plaintiff's handguns were stored in a locked safe to which no one has access other than him.

66. Plaintiff later received a Notice of Suspension dated June 21, 2024 signed by Komorowski ("Notice").

67. The Notice informed Plaintiff that his license – and ability to possess and purchase handguns – was suspended "[a]s a result of an incident." No further information about the reason for the suspension was provided by Komorowski.

68. The Notice also required Plaintiff to surrender his handguns and pistol license.

69. Under the Cohabitant Policy, where a cohabitant is transported for a mental health evaluation, the Licensing Bureau requires the licensee to obtain a doctor's note from the cohabitant's treating physician that indicates the cohabitant is safe to reside in a house where firearms are stored.

70. Officer Campbell told Plaintiff that, if there was any chance at getting his license reinstated, he would have to provide a doctor's note from his wife's doctor indicating that she is safe to reside in a home where guns are stored.

71. Under the Cohabitant Policy, safe storage of a licensee's handguns – the fact that the cohabitant has no access to the handguns - is "irrelevant."

72. Officer Campbell informed Plaintiff that he was required to provide a doctor's note from his wife's doctor indicating that his wife is safe to reside in a house where firearms are stored.

73. Officer Campbell informed Plaintiff that, even if he could provide a note from his wife's doctor, that did not guarantee his license would be reinstated.

74. Plaintiff attempted to, but cannot, obtain the doctor's note from his wife's doctor required by Defendants.

75. Under the "Cohabitant Policy" in the absence of a doctor's note, Plaintiff's license will not be reinstated.

76. The conduct being regulated by SCPD's policy, the possession of handguns for self-defense, is presumptively protected by the Second Amendment.

77. Suffolk County cannot justify prohibiting Plaintiff's possession of handguns (existing and future) because there is no historical analogue for such a regulation.

78. Plaintiff has never been accused, or adjudicated, of committing any disqualifying event warranting the termination of his right to possess handguns, whether temporarily or otherwise.

79. By suspending Plaintiff's pistol license, Defendants created an absolute barrier to Plaintiff's ability to possess his handguns and/or to acquire any additional handguns.

80. By suspending Plaintiff's pistol license under SCPD policy, Defendants violated Plaintiff's Second Amendment rights.

81. By suspending Plaintiff's pistol license under SCPD policy, Defendants divested Plaintiff of his property, to wit, his lawfully owned handguns, in the absence of a warrant, exigency, or statutory disqualification of Plaintiff to possess firearms.

82. Defendants' confiscation of Plaintiff's handguns violated his Fourth Amendment rights.

83. Defendants' confiscation of Plaintiff's handguns for an open-ended and substantial period of time – constitutes a meaningful interference with his lawfully owned property for which he has a vested and recognized property interest.

84. Defendants allege that Plaintiff's license and handguns were seized "for the public good/benefit" because they need to "investigate" whether Plaintiff continues to be "qualified" to possess them – as set forth in the Notice of Suspension.

85. Defendants' "taking" is unlawful, as Plaintiff has done nothing to forfeit his right to possess his property.

86. Defendants have not compensated Plaintiff for the loss of his property.

87. Defendants' confiscation of Plaintiff's pistol license and handguns violated Plaintiff's rights under the Fifth Amendment Takings Clause.

88. To date, Plaintiff's license remains suspended under the policies challenged herein and his handguns have not been returned or released.

***Monell Liability***

89. Defendants' policies and procedures as set forth above subjects Suffolk County to *Monell* liability.

90. Under *Monell*, an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself. *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). Conversely, constitutional torts committed by city employees without official sanction or authority do not typically implicate the municipality in the deprivation of constitutional rights, and therefore the employer-employee relationship is insufficient to establish the necessary causation. *Id.*

91. Subsequent cases have considerably broadened the concept of official municipal action. In *Pembaur*, the Court recognized that "when a municipality decides to adopt a particular course of action, ... it surely represents an act of official government 'policy' as that term is commonly understood." *Amnesty*, 361 F.3d at 125 quoting *Pembaur*, 475 U.S. at 481. "It is not necessary, therefore, for plaintiffs to prove that a municipality has followed a particular course of action repeatedly in order to establish the existence of a municipal policy; rather, a single action taken by a municipality is sufficient to expose it to liability." *Ibid.*

92. The sworn testimony of SCPD Sgt. Walsh and Officer Plihcek in *LaMarco v. Suffolk County* [22 Civ. 04629, ECF 28], *Milau v. Suffolk County*, 17 Civ. 6061 (JS)(SIL) (pending), which challenges Suffolk County's refusal to issue the plaintiff a pistol license because his cohabitant son is disqualified from possessing firearms [*Id.* ECF 49 at 1-2]; the SCPD Pistol

License Handbook, and *Webber v. Suffolk County*, 24 Civ. 6387 (GRB)(JMW) (denial of license based on enforcement of cohabitant policy); see also, *Torcivia v. Suffolk Cnty., New York*, 409 F. Supp. 3d 19, 29 (E.D.N.Y. 2019), aff'd, 17 F.4th 342 (2d Cir. 2021) (license suspension because plaintiff's daughter was transported for mental health evaluation) see also *id*. (*Monell* liability established where officer testified to the policy and the undisputed facts demonstrated the policy's enforcement against the plaintiff. "A reasonable juror could conclude from these facts that Plaintiff's weapons were seized pursuant to a formal County policy, particularly where Officer Adler explicitly stated that he acted pursuant to 'standard procedure'…At the very least, a reasonable juror could find that this 'standard procedure' constituted a County custom").

93. SCPD's policy[5] contradicts one of the central holdings in *Heller*: that the Second Amendment protects an individual right, not a collective right.

***Defendants' Abuse of the Licensing Authority to Violate the Fourteenth Amendment***

94. Defendants' confiscation of Plaintiff's license and/or handguns violates his right to pre-deprivation due process.

95. The responding SCPD officers did not seize Plaintiff's license and/or handguns because they had no legal cause to do so.

96. No warrant was sought or obtained by Defendants.

97. No exigency existed at the scene for the SCPD responding officers to seize Plaintiff's license and/or handguns.

---

[5] In *LaMarco,* when asked how Tom LaMarco was "ineligible to possess handguns" based on the fact that his son is ineligible to possess firearms, Officer Plihcek responded, "Because it's a common practice at the Pistol License Bureau that the entire household is held to the same standard as the licensee, the same eligibility" [see, *Id.* at ECF 28, SOF ¶ 85, Ex. 10 at 21], which was "Admitted" by Suffolk County.

98. No crime was committed by Plaintiff, he was not charged with a crime, nor was he arrested.

99. Defendants are abusing their authority to suspend a pistol license, for which there are no grounds to do so.

100. Plaintiff remains "eligible" to possess handguns under all factors outlined in Penal Law §400.00(1).

101. Defendants' abuse of the licensing authority deprived Plaintiff of his lawfully owned property and his right to engage in conduct presumptively protected by the Constitution.

***Defendants Are On Notice, Yet Continue to Enforce an Unconstitutional Policy in Deliberate Disregard for Plaintiff's Constitutional Rights***

102. Defendants continue to suspend Plaintiff's pistol license and retain his handguns despite the knowing inability of the County to defend the constitutionality of its policies.

103. In *LaMarco v. Suffolk County,* 22 Civ. 4629 (GRB) (JMW), the plaintiffs' motion for summary judgment was fully submitted to the court on July 1, 2024.

104. On July 2, 2024, the Hon. Gary R. Brown Ordered Suffolk County to file supplemental briefing, as follows:

> In its papers, the Suffolk County Attorney fails to argue the proper application of *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 142 S. Ct. 2111 (2022) by dodging the issue, asserting that the subject matter of this case is somehow outside the ambit of the Second Amendment. See Docket Entry 28-35 at 11-13.
>
> This assertion is spurious, seemingly interjected for dilatory purposes. It is obvious that this case involves the proper application of the Second Amendment, and arguments surrounding Bruen are critical to its proper resolution. Indeed, Ms. Zwilling, the Assistant County Attorney handling this case, is well aware of the applicability of the Second Amendment given her work in *Torcivia v. Suffolk Cnty., New York*. 409 F. Supp. 3d 19, 36 (E.D.N.Y. 2019), affid, 17 F.4th 342 (2d Cir. 2021) ("There can be no question that [Suffolk County's] Revocation

14

> and Seizure Policies implicated conduct within the scope of the Second Amendment. At least one of the Policies resulted in the revocation of Plaintiff's pistol license and the temporary seizure of Plaintiff's firearms, and limited Plaintiff's ability to possess handguns.").
>
> Moreover, the County's assertion that Bruen is not retroactive is equally preposterous. See, e.g., *Passalacqua v. Cnty. of Suffolk*, No. 19-CV-5738 (GRB)(SIL), 2022 WL 21795141, at *3 (E.D.N.Y. Dec. 9, 2022) ("Further, the fact that the events at issue took place prior to the Supreme Court's decision in *Bruen* has no bearing on its applicability to the present motions.") (citation omitted). Notably, Ms. Zwilling also represents the County in *Passalacqua*.
>
> Thus, the County is DIRECTED to file a supplemental brief of no more than 10 pages setting forth its position on the proper application of *Bruen* and *United States v. Rahimi*, No. 22-915, 2024 WL 3074728 (U.S. June 21, 2024) to the pending motion within 10 days. Counsel for plaintiffs shall have two weeks to file a response. Given the absence of a good faith basis for the County's position, the Court will, pursuant to Rule 11, award Plaintiffs' attorneys' fees for the preparation of this supplemental brief.
>
> Ordered by Judge Gary R. Brown on 7/2/2024. (JP) (Entered: 07/02/2024)."

105. Rather than comply with the court's Order, Suffolk County defaulted [22 Civ. 4629 at ECF 30].

106. As noted above, the court in *LaMarco* found there was an "absence of a good faith basis for the County's position" in its opposition to the LaMarco's motion for summary judgment and noted it will award Plaintiffs' attorneys' fees for the preparation of this supplemental brief under Rule 11.

107. On July 31, 2024, Suffolk County informed the court that the defendants would not be complying with the court's Order to file a supplemental brief "setting forth its position on the proper application of *Bruen* and *United States v. Rahimi*" [*Id.* at ECF 30].

108. To date, Suffolk County has failed to put forth a legal defense to the unconstitutional policies challenged in *LaMarco, Milau v. Suffolk County, Torcivia v. Suffolk*

*County*[6], and *Webber v. Suffolk County* (24 Civ. 6387 (GRB)(JMW)) (and enforced against Plaintiff), as required by *Bruen* and as Ordered by the court in *LaMarco*.

109. Rather than decide the plaintiffs' motion for summary judgment, as the plaintiffs specifically requested [*Id.* at ECF 31], the court in *LaMarco* Ordered on August 13, 2024 that within "45 days" Suffolk County is to "develop and explore specific policy changes to resolve this matter that should be presented to plaintiffs in the form of a consent decree" and "[i]f the parties cannot resolve the matter, they may seek a settlement conference with Judge Wicks."

110. To date, the County has failed to identify any changes to their policies.

111. Yet, with actual knowledge that there was no legal defense to the policy challenged in *LaMarco, Milau, Torcivia,* and now here, Suffolk County, Komorowski, and Campbell *persist* in enforcing the same policies against other licensees, including Plaintiff.

112. The knowing enforcement of the challenged policy, which Defendants know is legally indefensible yet continue to enforce, constitutes a deliberate indifference to the constitutional rights of Plaintiff, and all other Suffolk County residents against whom Defendants have enforced it.

113. "Treating 'everyone in the household the same'[7] contradicts one of the central holdings in *Heller*: that the Second Amendment protects an individual right, not a collective right"].

---

[6] See, *Milau v. Suffolk County*, *et al.*, 17 Civ. 6061 (EDNY) (JS) (pending) (Suffolk County refuses to issue a pistol license to the plaintiff so long as his son (who is legally prohibited by a disqualifying misdemeanor conviction from possessing firearms) continues to reside with him; *LaMarco v. Suffolk County*, 22 Civ. 04629 (GRB) (suspension of parents' pistol licenses and confiscation of firearms because adult son was transported for a mental health evaluation). *Torcivia v. Suffolk County, et al.*, 15 Civ. 1791 (EDNY) (GRB) (grounds for Suffolk County's 2014 revocation of plaintiff's pistol license included (i) plaintiff's daughter had been 'treated for mental health issues'; (ii) aided calls to the home related to his daughter; and (iii) plaintiff's failure to notify the Licensing Bureau of the foregoing).

[7] In *LaMarco,* when asked how Tom LaMarco was "ineligible to possess handguns" based on the fact that his son is ineligible to possess firearms, Officer Plihcek responded, "Because it's a common practice at the Pistol License Bureau that the entire household is held to the same standard as the licensee, the same eligibility" [see, *Id.* at ECF 28, SOF ¶ 85, Ex. 10 at 21], which was "Admitted" by Suffolk County.

114. Defendants' conduct caused a blanket prohibition on Plaintiff's right to possess handguns for self-defense.

115. Defendants' actions have caused Plaintiff to suffer, *inter alia,* the absolute bar to conduct presumptively protected by the Second Amendment, presumed harm arising from the violation of his constitutional rights, loss of the use and enjoyment of his property, garden variety pain and suffering, nominal damages, punitive damages, and economic damages.

## COUNT I
## U.S. CONST., AMEND. II and XIV, 42 U.S.C. § 1983

116. Repeat and reallege paragraphs "1" through and including "115."

117. Under the theory that Defendants are liable to Plaintiff for violations of his Second Amendment rights. 42 U.S.C. § 1983.

## COUNT II
## U.S. CONST., AMEND. IV, 42 U.S.C. § 1983

118. Repeat and reallege paragraphs "1" through and including "117."

119. Under the theory that Defendants are liable to Plaintiff for violations of his Fourth Amendment rights. 42 U.S.C. § 1983.

## COUNT III
## U.S. CONST., AMEND. V, 42 U.S.C. § 1983

120. Repeat and reallege paragraphs "1" through and including "119."

121. Under the theory that Defendants are liable to Plaintiff for violations of his Fifth Amendment rights. 42 U.S.C. § 1983.

## COUNT IV
## *MONELL* LIABILITY

122. Repeats and realleges paragraphs "1" through and including "122."

123. Under the theory that, by creating, maintaining, enforcing, following, and/or applying the unconstitutional policy described herein, the County of Suffolk is liable to the plaintiff under *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018 (1978) for the violations of his Constitutional Rights as plead herein, 42 U.S.C. §1983.

WHEREFORE, a Judgment and Order is respectfully requested:

- Declaring that the Suffolk County policies and procedures described herein violate the Second Amendment;

- Preliminarily and permanently enjoining Defendants, their employees, agents, attorneys, and all others working in concert with them from enforcing the Suffolk County policies and procedures detailed herein, to wit, (i) interfering with an individual's possession and/or carriage of firearms for self-defense because of the actions, condition, and/or eligibility status of third parties; (ii) interfering with an individual's possession and/or carriage of firearms based on who the individual resides with; (iii) interfering with an individual's possession and/or carriage of firearms because such individual did not provide notification to the Licensing Bureau of events that have no bearing on that individual's eligibility to possess firearms; and from publishing such policies in the Suffolk County Pistol Licensing Bureau Handbook;

- Judgment in favor of Plaintiff against Defendants for violations of Plaintiff's Second (and Fourteenth), Fourth, and Fifth Amendment constitutional rights;

- Awarding in Plaintiff garden variety compensatory damages;

- Awarding Plaintiff nominal damages;

- Awarding Plaintiff economic damages;

- Awarding Plaintiff punitive damages against the individually named defendants;

- Awarding Plaintiff costs, disbursements and reasonable statutory attorney's fees;

- Granting such other, further, and different relief as to this Court seems just, equitable, and proper.

Dated: November 7, 2024
       Scarsdale, New York

                                        THE BELLANTONI LAW FIRM, PLLC
                                        *Attorneys for Plaintiff*

By:   */s/ Amy L. Bellantoni*
        Amy L. Bellantoni
        2 Overhill Road, Suite 400
        Scarsdale, New York 10583
        abell@bellantoni-law.com